In re KOLBE.

No. 14273.

District Court, N. D. Ohio, W. D.

March 17, 1942.

Elmer McClain, of Lima, Ohio, for farmer-debtor.

Edwin B. Pierce, of Hamilton, Ohio, for creditor.

KLOEB, District Judge.

Proceedings in bankruptcy under Section 75 sub. s, 11 U.S.C.A. § 203, sub. s. The question here arises on a petition for review of an order of the conciliation commissioner granting a request made by the secured creditor for a reappraisal of the real estate and dismissing a motion of the farmer debtor to strike the request of the secured creditor from the files. The facts, briefly, are as follows:

The rental period commenced on March 1, 1938, and ended on March 1, 1941, pursuant to an order of the conciliation commissioner. On May 28, 1941, the debtor

paid into court the sum of $1,675, which was the value of the real estate at the original appraisal made several years prior thereto, and requested title and possession of the property under Section 75, sub. s(3). The conciliation commissioner gave notice to all creditors, including the moving creditor herein, of a hearing upon said payment into court and request for an order to turn over to the debtor the full possession and title. The hearing was held on June 30, 1941. On the day of the hearing, the secured creditor moved that the real estate be sold at public auction. It is also claimed that the creditor moved orally for a reappraisal at this meeting, although this is denied by the debtor. In any event, the hearing was continued by the consent of all parties, and on July 5, 1941, the creditor made a written request for a reappraisal. On July 18, 1941, the debtor moved to strike from the files the motion of the secured creditor for a reappraisal. On September 16, 1941, the conciliation commissioner issued an order granting the request for a reappraisal and denying the motion to strike the request for reappraisal from the files. From this order the debtor appeals.

The question is whether the court can order a reappraisal after the three-year stay and rental period has expired and after the farmer debtor has paid into court the amount of the original appraisal. Section 75 sub. s(3) reads as follows:

"At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal or the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor."

In determining the effect of this provision, the court desires to quote from the opinion in the case of In re Wright, 7 Cir., Feb. 14, 1942, 126 F.2d 92:

"Determination of these questions, naturally divides itself into (1) May there, *under any circumstance,* be a reappraisement? * * * Our conclusion as to the first query is, that neither party is bound by the first appraisement. The court, in the interest of justice, can, and should, make a reappraisement, if the facts warrant it. No express statutory authorization for a reappraisement would be necessary. It is inherent in equity principles. Moreover, we think the statute authorizes reappraisals.

"On behalf of a debtor, it is easy to conceive of instances where buildings were burned, or damages from lightning, floods, or other causes have materially lessened the value of the premises. Fairness to the debtor would require a reduction in the redemption price, that is in a reappraisement.

"On the other hand, if the circumstances show an increase in the value of land during the years which the debtor is in possession, fairness to the creditor also requires a reappraisement.

"It is likewise easy to conceive of a case in this circuit where, during that three year period, oil might be discovered underlying the surface of the land possessed by the debtor. To permit debtor to remain in possession for three years (in this case eight years) without the payment of taxes or any sum for the use of the premises, would be highly inequitable and unfair to the creditor—unless a reappraisement were had.

"A fair construction of the statute would seem to permit of a change in appraisal, if the facts warrant or require it. And this is so *regardless of who is helped or hurt by* the reappraisement." (Italics added.)

We feel that there is nothing in the instant case which distinguishes it from the above cited case. Here the farmer debtor waited until 12 weeks after the three-year stay had expired, and then deposited the money. Within 6 weeks thereafter, the secured creditor moved for a reappraisal. Certainly if the debtor is granted a reasonable time in which to redeem the property after the three-year stay has expired, then the creditor must be granted a reasonable time in which to request a reappraisal.

It would be a useless act to request a reappraisal before the debtor indicated an intention to redeem the property, and the court would not, in fact, order it. If the debtor does not redeem the property, it will be sold at public auction and hence there would be no necessity for a reappraisal.

In the instant case, the debtor waited 12 weeks to see if there would be a request for reappraisal. He then deposited the money and attempted to foreclose the creditor from seeking a reappraisal. In the view we take of it, neither the debtor nor the creditor is permitted to gamble with the property in this manner—it would be the duty of the court to order a reappraisal if the facts warranted it. Just as it would be unfair to permit the creditor to gamble with the possibility that the debtor might not be in a position to redeem the property, so it would be unfair to the creditor to permit the farmer debtor to wait 12 weeks and then claim that a reasonable time for a request for reappraisal had passed, particularly when there would be no reason to make such a request until the debtor showed a desire to redeem the property.

The debtor relies upon the case of Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 199, 85 L.Ed. 184. We find nothing in that case which deals with the price at which the debtor shall redeem the property. It merely protects the debtor's right to redeem. It would be grossly unfair to the secured creditor to permit the debtor to redeem the property at a price considerably under the real value thereof. In fact, the following language of the Supreme Court in that case indicates its recognition of this contingency: "Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, *to the extent of the value of the property.*" (Italics added.)

If there were any indication that the secured creditor was actually engaged in sharp practices of any nature, the court might consider such facts under its broad equity powers. But the record is entirely devoid of any facts tending to show that the secured creditor was not acting in good faith throughout.

The order of the conciliation commissioner ordering the reappraisal of the property is affirmed.